EDWARD TALKINGTON *v.* STATE OF MISSISSIPPI.

[40 South. Rep., 163.]

CRIMINAL LAW.   *Evidence.   Hearsay.   Race prejudice.   Assault with
      intent to rape.*

> The conviction of a white boy, for an assault and battery with
> intent to rape a negro girl, will be reversed because of the intro-
> duction, over defendant's objection, of hearsay testimony, calcu-
> lated to inject race prejudice into the case.

FROM the circuit court of Tate county.

HON. JAMES B. BOOTHE, Judge.

Talkington, the appellant, a white boy, seventeen years of age,
was indicted and tried for and convicted of an assault and bat-
tery in and upon the person of one Centennial Timmons, a negro
girl, ten years of age, with intent to ravish and carnally know
the said Centennial, and appealed to the supreme court.   The
principal assignment of error was predicated of the introduction,
over defendant's objection, of the hearsay testimony mentioned
in the opinion of the court, the facts in respect to which are
there stated.

*J. F. Dean,* and *M. H. Thompson,* for appellant.

Error was committed by the court below in permitting Will-
iams, a witness for the state, to detail a conversation he had with
Henry Timmons, the father of Centennial Timmons, in the
absence of the defendant, about prosecuting the defendant.

First—It was hearsay of the rankest kind; it was permit-
ting one state witness to testify what another state witness, pres-
ent and testifying in court, had told him in the absence of the
accused.

Second—Not only was it error to permit Williams to tell
what Timmons had said, but Timmons himself could not testify

properly as to what he had told Williams, nor his own desires as to proscuting the defendant.    Still, he was permitted to do so. It could shed no light on the question in issue whether or not Edward Talkington had raped or attempted to rape the girl, and it was not introduced for that purpose.    It was introduced for the purpose of creating a prejudice against the defendant and to bolster up the state's own witness by showing that, being a negro, he was afraid to prosecute a white boy, and to show that the most influential men of Arkabutla, and not the negro, were prosecuting the case.    It was injecting a race question into the trial of the case that had no business there, and which worked with fatal effect on the trial jury.

*R. V. Fletcher,* assistant attorney-general, for appellee.

Touching the testimony of Williams in regard to what the father of the child said about not wanting to prosecute the defendant, we beg to say that the purpose of introducing this testimony was to show that the witness was not a willing witness, animated by an overwhelming desire to convict, but that his evidence was given because he was brought before the jury by the process of the court, and that he did not appear voluntarily.    The defendant had already attempted to show on cross-examination that this witness was biased.    Now, this brought into issue the question of the interest which he had in the case, and it is always competent to offer evidence which tends to negative bias or interest when such bias or interest is sought to be shown by the opposite party.    30 Am. & Eng. Ency. Law (2d ed.), 1143; *Illinois, etc., R. R. Co.* v. *Haynes,* 64 Miss., 604 (s.c., 1 South. Rep., 765).    And it has been held that where a witness is accused of instigating the prosecution, it may be shown that a justice of the peace advised the suing out of the warrant.    *McAlpin* v. *Srare* (Ala.), 23 South. Rep., 130; *Burt* v. *Long,* 106 Mich., 210.

These authorities seem to settle the question in favor of the view that it is always competent to rebut the charge of interest

by showing that the witness is not active in prosecution or has entered upon the prosecution reluctantly.

But if mistaken in this, and though the court should consider this evidence improper, it is respectfully submitted that the error is not cause for reversal.    It is not conceivable that this scrap of testimony could have had any weight with the jury.

WHITFIELD, C. J., delivered the opinion of the court.

It was manifest and fatal error to permit the witness—Dr. Williams—to detail the conversation which he had with the father of the girl as to whether he (the father) wanted to prosecute the case, etc.    Dr. Williams testified that he asked "the father what he proposed to do about it," and he said: "Doctor, I don't know, sir; I will just have to drop it; I am a negro, and he is a white man, and I don't want any trouble."    The necessary and direct effect of this hearsay testimony was to inject race prejudice into the jury box.

<div align="right">

*Reversed and remanded.*